UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LUZ C. MORALES,

             Plaintiff,

     v.                                                                    **DECISION AND ORDER**
                                                                                 19-CV-931S
COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

_____


      1.      Plaintiff Luz Morales brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits under Title II and Title XVI of the Act.  (Docket No. 1.) The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed her application for benefits with the Social Security Administration on March 4, 2016. (R.[1] at 150.) Plaintiff alleged disability beginning on October 27, 2015, due to anxiety, depression, asthma, arthritis, and GERD. (R. at 150-51.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ Patricia French held a hearing on May 23, 2018, at which Plaintiff, represented by her attorney and assisted by an interpreter, appeared and testified by videoconference. (R. at 76-129.) Vocational Expert James Conway also appeared and testified. (R. at 76.) At the time of the hearing, Plaintiff was 46 years old,

---

[1] Citations to the underlying administrative record are designated as "R."

with a high school diploma and some college, and prior work experience as a cleaner, baker's assistant, and hand packager. (R. at 28, 97-102.)

3.     The ALJ considered the case *de novo* and, on July 26, 2018, issued a written decision denying Plaintiff's application for benefits. (R. at 16-30.) On May 15, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on July 15, 2019, challenging the Commissioner's final decision.[2]

4.     Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 9, 10.)  Plaintiff filed a response on March 10, 2020, (Docket No. 11), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

5.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the

---

[2] The ALJ's July 25, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8.      The five-step process is as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

3

mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged disability onset date of October 27, 2015. (R. at 19.)  At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc

disease of the spine; venous insufficiency; carpal tunnel syndrome; migraine headaches; and posttraumatic stress disorder. (Id.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R. at 20.)

11.     Next, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform light work, except that

> she can only frequent (sic) but not constant, handle and finger with her hands bilaterally; only frequent but not constant, forward reach to shoulder height with the right dominant arm; only occasional overhead reaching with the right dominant arm; and only frequent, but not constant bending, squatting, and crawling. She should avoid exposure to unprotected heights, heavy machinery, vibration and climbing of ladders ropes scaffolds. She can tolerate occasional climbing of ramps and stairs in a low stress work environment with simple, routine and repetitive tasks. She should also avoid concentrated exposure to dust, smoke, fumes, and pulmonary irritants. She should also avoid occasional exposure to extremes of heat and humidity. Lastly, she will be off task up to but not in excess of 10 percent of the workday in addition to regular breaks and working independently with only occasional instruction, but is able to receive instructions visually or by demonstration.

(R. at 22.)

12.     At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (R. at 28.)  At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. at 29.) Accordingly, the ALJ found that Plaintiff was not disabled at any time between the alleged disability onset date of October 27, 2015, and the date of the decision. (R. at 30.)

13.     Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because the ALJ improperly gave substantial weight to what Plaintiff argues were the stale opinions of Dr. Donna Miller and Dr. John Schwab, and the ALJ

impermissibly substituted her lay judgment for medical opinion in formulating Plaintiff's RFC.

14.     Plaintiff first argues that the opinions of Dr. Miller and Dr. Schwab were stale because they do not reflect Plaintiff's subsequent development of migraines, knee and back pain, and carpal tunnel syndrome. (Docket No. 9-1 at p. 13.) Defendant argues that the ALJ took subsequent evidence into account in formulating Plaintiff's RFC. Defendant's argument is unavailing.

15.     On October 16, 2015, Plaintiff was seen by Dr. John Schwab for an internal medicine examination. (R. at 514-16.) Dr. Schwab noted that Plaintiff's left shoulder had a full range of motion, while her right shoulder had forward rotation of 40 degrees, with internal rotation of 20 degrees. (R. at 515-16.) Dr. Schwab diagnosed Plaintiff with osteoarthritis in the right shoulder and asthma, and said Plaintiff was restricted in raising her right arm above shoulder height, and should avoid respiratory irritants. (R. at 516.) Dr. Schwab did not refer to or diagnose migraines, knee or back problems, or carpal tunnel syndrome.

16.     Dr. Donna Miller performed an internal medical examination on June 1, 2016. (R. at 621-24.) She found limitations in Plaintiff's right shoulder rotation, but noted that Plaintiff's hand and finger dexterity were intact. (R. at 623.) Dr. Miller diagnosed Plaintiff with asthma, osteoarthritis, and GERD. (R. at 624.) Dr. Miller stated that Plaintiff should avoid dust and irritants, and that she had a mild limitation with heavy lifting, bending and carrying (Id.) Dr. Miller did not refer to migraines, knee or back pain, or carpal tunnel syndrome.

17.    After June 2016, when she saw Dr. Miller, Plaintiff was diagnosed with chronic, intractable migraine. (R. at 1077-79.) In January 2017, Plaintiff reported headaches at least 3 times per week, with light sensitivity and nausea. (R. at 1072). She received occipital nerve blocks which provided relief for about 2 weeks. (R. at 1075, 1072.) She began treatment with Botox injections in February 2017 and reported relief though headaches began to recur even with the Botox treatments. (R. at 1067-69, 1064.) Even after several rounds of Botox, Plaintiff visited the Emergency Department with a migraine in March 2018. (R. at 1060.) On a form dated April 4, 2018, Plaintiff reported both "100% improvement" of her headaches, and  2-3 headache days per month, with Botox treatment. (R. at 1043.)

18.    Plaintiff also developed back and knee pain and carpal tunnel syndrome after Drs. Schwab and Miller examined her. Regarding back pain, the ALJ noted that an MRI from October 2018 showed broad -based disc bulges without stenosis. (R. at 26.) The ALJ stated that "while noting disc bulges, this radiology report does not suggest marked limitations in work-related functioning." (R. at 26.) Plaintiff's record also shows a diagnosis of and treatment for carpal tunnel syndrome. (R. at 771, 824.) The ALJ stated that "although treatment notes reveal positive carpal tunnel compression, in July of 2017 muscle strength was 5/5", and that providers overserved "only mild to moderate discomfort with resisted wrist extension and resisted middle finger extension."  (R. at 26.)

19.    The ALJ considered the opinions of Dr. Schwab and Dr. Miller along with the other record evidence in formulating her RFC. She noted that their opinions were "quite general and do not specifically define the frequency with which the claimant can engage in these activities on a regular basis." (R. at 25.) Nevertheless, she gave them

substantial weight because they suggested "that the claimant's physical condition is not as limiting as subjectively alleged." (R. at 25-26.)  Overall, the  ALJ found that Plaintiff's physical symptoms were "essentially unremarkable."  (R. at 26.)

20.      Plaintiff argues that it was error for the ALJ to give substantial weight to the opinions of Dr. Miller and Dr. Schwab, because they do not account for the conditions Plaintiff developed subsequently, specifically her migraines, back and knee problems, and carpal tunnel syndrome.

21.      A medical opinion is stale when it is "rendered before some significant development in the claimant's medical history." Clark v. Comm'r of Soc. Sec., No. 18-CV-0509-MJR, 2019 WL 3886723, at *3 (W.D.N.Y. Aug. 19, 2019).  For a medical opinion to be stale, not only must there be a significant period of time between the date of the opinion and the hearing date, there also must be subsequent treatment notes "indicat[ing] a claimant's condition has deteriorated" over that period. Vazquez v. Saul, No. 18-CV-242, 2019 WL 3859031, at *3 (W.D.N.Y. Aug. 16, 2019) (citing Whitehurst v. Berryhill, No. 1:16-CV-01005-MAT, 2018 WL 3868721, at *4, *5 (W.D.N.Y. Aug. 14, 2018)). Medical opinions that are "stale and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." Camille v. Colvin, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015), aff'd 652 F. App'x 25 (2d Cir. 2016).

22.      Defendant argues that these opinions are not invalid because Plaintiff "reported no difficulty with migraines to either Dr. Miller or Dr. Schwab." (Docket No. 10-1 at 7.) Defendant points to caselaw that medical opinions from well before an ALJ's decision are not stale *where there is no evidence that the claimant's condition significantly deteriorated, and the opinion was consistent with the record as a whole*. Carney v.

Berryhill, No. 16-CV-269-FPG, 2017 WL 2021520 at *6-7 (W.D.N.Y. May 12, 2017). This citation appears to make Plaintiff's case: the record demonstrates that migraines became a problem—that is, Plaintiff's condition deteriorated—after the opinions of Drs. Schwab and Miller. The subsequent record shows multiple diagnoses of and treatment for migraines, back problems, and carpal tunnel syndrome. Thus, Drs. Miller's and Schwab's opinions meet Defendant's own criteria for staleness, and they do not constitute substantial evidence, at least for the proposition that Plaintiff's later-emerging symptoms were "not as limiting as subjectively alleged." (R. at 26.)

23.     Plaintiff's second argument, related to her first, is that the ALJ improperly formulated Plaintiff's RFC in the absence of any medical opinion assessing the impact of her migraines, back and knee problems, and carpal tunnel syndrome on her ability to work. Defendant argues that the ALJ was permitted to consider the record as a whole and formulate an RFC that did not correspond to any one opinion. Defendant additionally argues that the RFC is supported by substantial evidence because the ALJ considered the evidence of migraines, and added a limitation based on them in her RFC.

24.     The ultimate responsibility to determine a claimant's residual functional capacity rests solely with the ALJ. Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). And the law provides that an ALJ is permitted to assess RFC, when the record contains enough evidence from which an RFC can be determined. See Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8-9 (2d Cir. 2017) (unpublished) (summary order) (formal medical opinion as to plaintiff's functionality was not required where the record contained sufficient evidence from which the ALJ could assess the residual functional capacity); Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013) (summary order).

25.     However, an ALJ is not a medical professional, and cannot assess a claimant's RFC on the basis of "bare medical findings." Ortiz v. Colvin, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). "As a result, an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Williams v. Berryhill, No. 18-CV-283, 2017 WL 1370995, at *3 (W.D.N.Y. Apr. 17, 2017) (quotation omitted); see also Dennis v. Colvin, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016). Remand is appropriate where the record lacks a "useful assessment" of the claimant limitations. Agostino v. Comm'r of Soc. Sec., No. 18-CV-1391-FPG, 2020 WL 95421, at *3–4 (W.D.N.Y. Jan. 8, 2020) (citing Freeman v. Comm'r of Soc. Sec., No. 18-CV-6008, 2019 WL 2016585, at *5 (W.D.N.Y. May 8, 2019)).

26.     The record from after 2016 contains numerous records of migraines, knee and back pain, and carpal tunnel syndrome. In the absence of an opinion on these conditions, the ALJ developed an RFC based solely on clinical findings. For example, she found that a radiology report, "while noting disc bulges, does not suggest marked limitations in work-related functioning." (R. at 26.)  Regarding carpal tunnel, the ALJ noted clinical diagnoses of carpal tunnel syndrome, but used a finding of 5/5 hand strength to discredit the severity of these findings. (Id.)

27.     Regarding Plaintiff's migraines, the ALJ noted that Botox injections gave Plaintiff significant relief from her migraines. (Id.) But the medical evidence contains other findings as well: a December 2016 MRI showed T2 hyperintensities "common in migraine sufferers" that may be "microvascular changes" (R. at 1056, 1058); Plaintiff was diagnosed with "intractable" headaches (R. at 1060); and even with Botox, Plaintiff

experienced 2-3 migraines per month. (R. at 1043.) A medical opinion is needed to relate these findings to Plaintiff's ability to work.

28.     The lack of a medical opinion is particularly troubling given the ALJ's determination that Plaintiff would be off-task up to but not more than 10% of the time. (R. at 22.) This Court cannot follow the ALJ's reasoning in making this determination. No medical opinion posits that Plaintiff would be 10% off task. If Plaintiff's migraines were indeed well-controlled, it is unclear why the ALJ thought she would be off-task up to 10% of the time. And if they were not well-controlled, this Court cannot determine why Plaintiff would be off-task up to 10% of the time, but not more. This becomes significant especially in light of the Vocational Expert's testimony that being off-task 14-15% of the time would be work-preclusive.  (R. at 127.)

29.     This Court finds that the record lacks a "useful assessment" of Plaintiff's limitations. Agostino, 2020 WL 95421, at *3–4. Without medical opinions relating Plaintiff's migraines, back pain, and carpal tunnel syndrome to her ability to work, the ALJ instead formulated her RFC based solely on the "bare medical findings." This is not substantial evidence on which to base an RFC, and remand is therefore warranted.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No.9) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No.10) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this opinion.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        April 30, 2020
              Buffalo, New York

                                          s/William M. Skretny
                                         WILLIAM M. SKRETNY
                                         United States District Judge